**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 24-MJ-127 (ZMF)** |
| | : | |
| **MALIK RODNEY WILLIAMS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM**
**IN SUPPORT OF PRE-TRIAL DETENTION**

On February 25, 2024, three individuals used firearms to force Y.A. into the back of a vehicle in the District of Columbia.  They proceeded to bind Y.A.'s hands and feet with zip ties and wrapped duct tape around his eyes.  Eventually, the kidnappers drove to Y.A.'s apartment in Virginia where they spent hours burglarizing it for cash, clothing, firearms, and various other valuables.  In particular, the kidnappers stole a FNH Fifty-Seven pistol bearing serial number 386243491 (the "FNH Pistol").  That pistol was recovered on April 9, 2024 underneath Mr. Malik Rodney Williams' bed, along with approximately 11.23 pounds of marijuana in the same room. As explained more below, the Defendant admitted at least eight pounds of that marijuana belonged to him.

The United States respectfully submits this memorandum in support of its oral motion that Defendant Malik Rodney Williams be detained pending trial under 18 U.S.C. §§ 3142 (f)(1)(C) (Controlled Substances Act offense) and 3142(f)(1)(E) (felony involving possession of a dangerous weapon).  Due to the circumstances surrounding the Defendant's arrest, there is a presumption that there are no condition or combination of conditions that will reasonably assure his appearance at future hearings and the safety of the community.

**FACTUAL BACKGROUND**

Mr. Timothy Williams (the Defendant's brother), and Mr. Jaevonn Archer (collectively,

1

the "Kidnappers") have been indicted by a federal grand jury for the February 25, 2024 kidnapping. *See* 24-CR-162 (RBW).  As part of its investigation, the government identified five residences and four vehicles the Kidnappers operated out of, all of which were searched on April 9, 2024.  These residences, including the residence where the Defendant was arrested (the "D.C. Residence"), operated as stash locations for Y.A.'s stolen property, while the vehicles were used by the Kidnappers to transport Y.A. himself and his stolen property.[1]  During the execution of these warrants, Timothy Williams and Jaevonn Archer were both arrested at separate residences.

The D.C. Residence is an apartment with multiple bedrooms located inside a multi-story apartment building. On April 9, 2024, members of law enforcement entered the D.C. Residence shortly after 6 a.m. (EST).  As protocol dictates, loud and clear demands were made for all residents to exit their rooms.  The Defendant was within his bedroom, alone, and refused to exit. Law enforcement was eventually forced to breach his bedroom door and the Defendant was located laying in his bed.  Once the Defendant was secured, law enforcement recovered the following items from the Defendant's room: (1) the FNH Pistol located under the Defendant's mattress, loaded with one round of 5.7 x 28 caliber ammunition in the chamber and additional rounds of the same ammunition in the magazine; (2) an additional magazine for the FNH Pistol containing rounds of 5.7 x 28 rounds of ammunition; (3) one camouflaged duffel bag containing approximately eight pounds of marijuana, and four additional bags containing marijuana (for a total of approximately 11.23 pounds of marijuana); (4) $8,000.00 in United States currency bundled into $1,000.00 stacks; (5) $731.00 and the Defendant's identification card (located on the

---

[1]  Specifically, cell site evidence places the Kidnappers around the D.C. Residence after burglarizing Y.A.'s apartment in Virginia. Surveillance footage corroborates this, as vehicles used by the Kidnappers are seen driving into the rear alley of the D.C. Residence during this period of time.  The rear alley features a walking path that provides direct access to the D.C. Residence.

bed with the Defendant).  In addition, throughout the residence multiple pieces of what appears to be Y.A.'s property were located, including shoes and a gaming console that was stolen from his residence on February 25, 2024. A photograph of the FNH Pistol where it was recovered is below:



As the Defendant was previously convicted of three separate felonies (Robbery, Attempt to Commit Robbery, and First Degree Theft) in D.C. Superior Court Case 2015 CF2 3203, he was subsequently placed under arrest and charged by Complaint with violating 18 U.S.C. § 922(g)(1).

The Defendant and the Kidnappers were brought to FBI's Washington Field Office immediately after, and the Defendant and Archer were placed into a holding cell that is monitored by audio and video surveillance.  Once inside the cell, over a period of two hours the Defendant and Archer appeared familiar with each other and discussed their respective charges.  Specifically, the Defendant states: "I got like $8,000.00 in the house, cash," and "I don't think they took my money, they couldn't have, they said 'you got caught with the gun,' they didn't say nothing about

the weed . . . I had like six (6), seven (7), eight (8) pounds left."  Later, the Defendant said to Archer "I can run that eight (8) bands like it ain't nothing."  During a pause in the conversation, the Defendant states to Archer "that bitch ass n\*\*ga gotta be snitching.  He's got to be."

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e).  The Act provides, however, for certain crimes, that there is a rebuttable presumption that no conditions or combinations of conditions will assure the safety of the community.  *See id.* The crimes triggering such rebuttable presumptions need not be expressly included in the charging instrument.  *See United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) (holding that "the complaint need not allege a violation of one of the particular predicate offenses for the presumption to come into play.")  Instead, "[if] the facts establish probable cause that the defendant has [committed such an offense], the judicial officer should give proper weight to Congress's general factual view that the defendant poses an unreasonable risk of danger to the community when applying the § 3142(g) factors."  *Id.*

In determining whether any condition or combinations of conditions will assure the safety of the community, in light of any applicable presumptions, the Court weighs four factors:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release.  *See* 18 U.S.C. § 3142(g).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention]

hearing." 18 U.S.C. § 3142(f).  Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer.  *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).  Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986).  *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).  A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues.  *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

I.    **The Nature and Circumstances of these Offenses Merit Detention.**

The nature and circumstances of this case weigh in favor of detention.

The Defendant is charged with a serious offense carrying significant penalties.  For violating 18 U.S.C. § 922(g), he faces a maximum sentence of up to fifteen years' imprisonment. But he faces even more significant charges based on evidence recovered at the time of his arrest. Should the Defendant be found guilty of the charge of Carrying a Firearm During a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c), he faces a mandatory minimum sentence of 5 years' imprisonment, and a maximum of life imprisonment.  Furthermore, the nature of the FNH Pistol recovered from the Defendant's bed is highly concerning to the government and should factor into this Court's analysis.  The Defendant was found in a residence connected to a violent and armed kidnapping committed by his brother, in possession of a firearm that was taken as part of that kidnapping.

While the crime the Defendant is currently charged with is possessory in nature, the firearm was found in proximity to distribution amounts of marijuana that the Defendant has admitted to possessing.  Courts in this District have repeatedly recognized the dangerousness associated with

carrying a firearm in connection with drug distribution. *See, e.g.*, *United States v. Carr*, 2022 WL 13947798 (D.D.C.),  at *4 (slip copy) (finding the first factor weighed in favor of detention given "the combination of drug distribution *and* the illegal possession of (multiple) guns presents a serious danger to the community."); *United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018) ("[A]lthough the mere fact that the defendant possessed a firearm does not constitute evidence of a danger to the community, possession of a firearm by a convicted felon who is allegedly engaged in illegal drug distribution is a different matter.").

The nature and circumstances of this offense weighs in favor of detention.

**II.     The Weight of the Evidence Against the Defendant is Overwhelming.**

The evidence against the Defendant similarly weighs in favor of pretrial detention.[2]  *See United States v. Blackson*, No. 23-CR-25 (BAH), 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023). ("[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true.").  When the search of the D.C. Residence occurred, the Defendant was the only individual occupying the room where the marijuana, the FNH Pistol, the second magazine, and the Defendant's identification card was found.

---

[2] This factor should be given equal weight in the Court's analysis of the § 3142(g) factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, then Chief Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 WL 1778194, at *8. Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* at *10. In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). The Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor.

Furthermore, in many cases charging violations of 922 (g)(1) before this Court, the illegal possession of the firearm in question is seen in a vacuum without context. That is not present here – the FNH Pistol was clearly stolen from Y.A. during a kidnapping which the Defendant's brother and the Defendant's associate are alleged to have committed. The FNH Pistol traveled to the D.C. Residence used to stash the victim's belongings before it was ultimately found beneath the Defendant's mattress accompanied by another magazine fitting that firearm. Accordingly, the government is able to explain the context that the firearm came into the possession of the Defendant, which bolsters the government's evidence in this case.

This factor weighs in favor of detention.

### III.    The Defendant's History and Characteristics Merit Detention.

This factor weighs heavily in favor of detention, as the Defendant comes to this Court with ten (10) prior arrests and three serious felony convictions that he committed while on release in a separate matter.

On June 22, 2018, the Defendant was convicted of (1) Robbery (Offenses Committed During Release); (2) Attempt to Commit Robbery (Offenses Committed During Release); and (3) Theft First Degree (Offenses Committed During Release) in D.C. Superior Court case number 2015 CF2 3203. Pursuant to a Rule 11(c)(1)(C) plea, the Defendant was sentenced to a total of fifty-four (54) months of incarceration, followed by three (3) years of supervised release. According to the agreed-to factual proffer, the convictions stem from three separate incidents that the Defendant committed while on GPS monitoring.

The Defendant admitted that on February 27, 2015, he and a group of coconspirators approached an individual and took his Mitsubishi sedan with force and violence (the factual proffer is silent as to how the Defendant did this). The next day, the Defendant admitted he grabbed a

victim's cell phone while she was using it and fled on foot afterwards.  Finally, the Defendant also admitted that on March 1, 2015, the Defendant and a group of coconspirators stole an unoccupied Acura vehicle and drove it away for their own personal gain.

Importantly, the Defendant's prior convictions show that he is not amenable to any other form of pretrial supervision other than detention.  While on GPS monitoring, the Defendant committed a string of robberies in the District of Columbia with a group of coconspirators. Such behavior is indicative of a brazen disregard for the criminal justice system, and the Defendant's continued possession of an illegal firearm, in combination with distribution amounts of marijuana, further supports this.   As such, this factor weighs strongly in favor of detention.

## IV.   Malik Williams Present a Danger to Our Community.

The fourth and final factor weighs in favor of detention.

"At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33.  The Defendant's possession of this firearm alone presents a significant danger to our community.  *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the defendant presents an extreme safety risk to the public."). And here, the evidence shows that the Defendant is associated with the violent kidnapping of Y.A. that occurred two months ago.  At the very least, the Defendant received proceeds of that kidnapping, and at the very most, the Defendant is the third kidnapper that the government has not yet identified.

While the firearm and drugs located in the D.C. Residence alone make the Defendant a danger to the public, the context from which the Defendant was arrested further supports that he is a danger to the community. As such, this final factor weighs in favor of detention.

## **CONCLUSION**

For these reasons, Mr. Malik Williams cannot overcome the statutory presumption of detention and should be detained pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

*/s/ Justin F. Song*
JUSTIN F. SONG
Assistant United States Attorney
N.Y. Attorney No. 5626379
601 D Street NW
Washington, D.C. 20530
(202) 227-9019
Justin.Song@usdoj.gov